JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

SUSAN E. BADGER (CSBN 124365)
JEFFREY RABKIN (CSBN 189798)
Assistant United States Attorneys

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7199
   FAX: (415) 436-7234
   e-mail: Susan.Badger@usdoj.gov
           Jeffrey.Rabkin@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Crim. No. 09-376 (SI) |
| Plaintiff, ) ) | UNITED STATES' REQUEST FOR ORDER LIMITING DEFENDANT'S |
| v. ) ) | CROSS-EXAMINATION OR ALTERNATIVELY AN |
| JUDY YEUNG, ) also known as "Miu Wan Yeung," ) ) | APPROPRIATE JURY INSTRUCTION |
| Defendant. ) | |

The United States of America, by and through its counsel of record, respectfully requests that the Court place appropriate limits on defense counsel's cross-examination of underwriter witnesses, or, in the alternative, instruct the jury at an appropriate time during defense counsel's cross-examination of underwriter witnesses that the question of whether the victim lenders could have discovered the defendant's fraudulent scheme is not a defense to the charges of wire fraud and wire fraud conspiracy.

///

///

///

## I.
## INTRODUCTION

During the next phase of this trial, the government intends to call witnesses from each of the victim lenders (Washington Mutual, Long Beach Mortgage, Silver State, Chase and Cal State 9 Credit Union).  These witnesses will present general testimony relating to the lending practices of their respective employers at the time that the fraudulent loan applications were submitted.  This testimony is offered by the government to establish the materiality of the false representations relating to the straw borrowers.

Before trial, the government brought to the Court's attention its concern that counsel for the defendant would seek inappropriately to cross-examine the underwriter witnesses.  Specifically, we raised the issue of whether the defense could suggest on cross-examination that the lenders could have discovered the charged fraudulent scheme had they been more careful.  These concerns were well-founded:  During defense counsel's opening statement she argued "the lenders accepted these fraudulent loan applications despite obvious warnings that the loans were fraudulent."  See Transcript, dated January 12, 2010, at 256:14-16.

Having presented evidence and other testimony from multiple witnesses detailing the nature of the defendant's fraudulent scheme, the government asks that the Court now preclude the defendant's efforts to blame the victim of the charged crimes.  The federal proscription of fraudulent schemes set forth in the wire fraud and wire fraud conspiracy statutes simply does not depend on whether a victim was diligent or not. Alternatively, the government asks that the Court instruct the jury at an appropriate time during defense counsel's cross-examination that evidence tending to show that the lenders might have discovered the fraud had they probed further is not a defense to the charges of wire fraud and wire fraud conspiracy.

///
///
///
///

## II.
## APPLICABLE LAW

The Ninth Circuit has specifically held that "[i]t is immaterial whether only the most gullible would have been deceived" by the defendant's scheme. United States v. Ciccone, 219 F.3d 1078, 1083 (9th Cir. 2000). The Ciccone holding followed the Ninth Circuit's earlier holding in Lemon v. United States, 278 F.2d 369 (9th Cir. 1960), in which the defendants argued they were not guilty of their crime because their scheme could only have deceived the "gullible" and not those of ordinary prudence and comprehension. The Lemon Court held that "the wire fraud statute 'protects the naive as well as the worldly-wise, and the former are more in need of protection than the latter. As a matter of fact . . . the lack of guile on the part of those solicited may itself point with persuasion to the fraudulent character of the artifice." Id. at 373; see also United States v. Hanley, 190 F.3d 1017 (9th Cir. 1999) (quoting Lemon).

Other Circuits to address this issue have concurred with the Ninth Circuit. For example, in United States v. Thomas, 377 F.3d 232 (2d Cir. 2004), the Second Circuit addressed a fraud case in which defense counsel attempted to cross-examine a representative of the victim entity about his purported lack of caution and diligence in dealing with the defendant. The district court questioned the propriety of the line of questioning, noting that it was no defense to fraud that the victim was foolish or made insufficient inquiries, and expressing its concern that defense counsel was insinuating to the jury that the victim could have discovered the fraud had he asked the right questions. Defense counsel disclaimed any such intent and was directed to move on. Id. at 240-41. The Second Circuit held the ruling to be an appropriate exercise of the District Court's discretion.

The Second Circuit also upheld the district court's mid-trial instruction to the effect that if the jury found fraud to be proved, it would be no defense that the victim might have discovered the fraud had it probed further. See id. at 241-42. The Thomas court made clear that federal anti-fraud statutes, see id. at 241 n.5, prohibit schemes to defraud and that to establish a scheme to defraud, there is no requirement that the victim

act as a person of ordinary prudence would.  Thomas emphatically "refuse[s] to accept the notion that 'the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim.'"  Id. at 243 (citing United States v. Benson, 548 F.2d 42, 46 (2d Cir. 1977)); see also United States v. Coyle, 63 F.3d 1239, 1243-44 (3d Cir. 1995) (holding that although fraudulent scheme must be reasonably calculated to deceive persons of ordinary prudence and comprehension, the "negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct").

The Seventh Circuit's decision in United States v. Coffman, 94 F.3d 330 (7th Cir. 1996) (Posner, J.), is to like effect.  In Coffman, the defendants executed a scheme to defraud by calling a brokerage firm and attempting to get a large loan by pledging worthless securities and making extravagant misrepresentations about the borrowers' net worth.  The defendants argued that they were not guilty of wire fraud, because "their misrepresentations, which primarily involved grossly exaggerating their wealth, could not have influenced Smith Barney in deciding whether to lend them the $300,000."  Id. at 333.  The Court rejected this argument, holding that if the defendants "intended to obtain money by lying about their financial status and prospects, it is not a defense that the intended victim was too smart to be taken in."  Id.  The Court continued, "even if the prospects for success were as poor as the defendants argue -- even if they were quite negligible -- the defendants would not be off the hook."  Id.  Indeed, because the wire fraud statute punishes the scheme, rather than the completed fraud, "[a]ttempts are punished even when the chance of success is dim -- even when the facts are such that, unbeknownst to the defendant, the attempt could not possibly succeed."  Id.

///
///
///
///
///
///

## III.
## THE GOVERNMENT'S REQUEST

A. The Defendant Should Be Precluded From Suggesting That The Lenders Could Have Detected The Fraudulent Scheme Had They Been More Careful

The evidence presented to date establishes that the defendant, together with others, obtained multiple mortgage loans by submitted false and fraudulent information on loan applications. The false information related (among other things) to the true identity of the borrower, the creditworthiness of the borrower, and the intent of the borrower to occupy the properties in question. The false representations were significant: for example, Washington Mutual was told that Kenneth Zhang made $28,000 per month, that he had $170,000 in the bank, and that he was currently paying $9,934 a month in mortgage payments. In fact, Zhang was making about $10,000 per year, had little if any money in the bank and was paying rent of less than $400 per month. See Transcript of January 12, 2010 at 308-310. The evidence has also established that the defendant obtained loans for Zhang, Phung and Dinh Lam by using forged Hang Seng bank letters. Ferrari's loan was procured with a falsified CPA letter.

Given this factual record, the government submits that it is inappropriate to question witnesses called to testify in general terms about the lenders' underwriting practices in a way designed to suggest that the loan file had been insufficiently scrutinized. This is particularly true since the government expects the underwriter witnesses will testify that underwriters typically begin their analysis of a loan application with the basic assumption that the information set forth in the loan application is truthful. Such questions are likely to confuse the jury into believing — wrongly — that the failure of a lender to prevent the fraudulent scheme is a defense to the wire fraud charges. Indeed, such questions wrongly suggest that materiality is a subjective standard when clear case law establishes that it is an objective one: the government need only establish that the false representations were reasonably capable of influencing a lender's decision, not that any specific lender was in fact was influenced by it. Neder v. United States, 527 U.S. 1, 24-25 (1999).

B. <u>Alternatively, The Government Requests An Appropriate Jury Instruction</u>

If the Court decides to permit cross-examination of underwriter witnesses on such issues of whether "red flags" might be found in the file upon a 20-20 hindsight review, or whether additional efforts to prevent fraud could have been employed, the government requests that the Court give the jury the following instruction:

> If you find that a fraudulent scheme or artifice existed, you may find the defendant guilty even if you believe the lenders might have discovered the fraud had they probed further or been more careful.
>
> Here, the Government alleges that the defendant, together with others, engaged in a scheme to defraud lenders by submitting, and causing to be submitted, false and fraudulent loan information, which materially misstated and omitted material facts such as (1) the borrowers listed on the loan application had no intention whatsoever of paying the mortgages or living in these homes; and (2) the income, employment and assets of the borrowers listed on the loan application were false and inflated.
>
> If you find these false representations could reasonably have influenced a lender's decision to fund the requested mortgage loans, it is irrelevant whether you believe that the lenders in this case were careless, gullible, or even negligent. Whether or not the lenders in this case relied on the false representations and omissions is also irrelevant.

This jury instruction is wholly consistent with the cases cited above and in the government's trial brief, and would serve to prevent confusion on the jury's part as to the government's burden of proof in this case.

DATED: January 24, 2009                     Respectfully submitted,


                                            JOSEPH P. RUSSONIELLO
                                            United States Attorney


                                              /s/
                                            SUSAN E. BADGER
                                            JEFFREY RABKIN
                                            Assistant United States Attorneys